J. W. GRIFFIS, *as Sheriff of Chase County,* v. C. C. WHITSON.

No. 38.

1. REPLEVIN—*Chattel Mortgage Must be on File.* Where the plaintiff in an action in replevin claims the right of possession under and by virtue of a certain chattel mortgage, and it is admitted that the property covered by said mortgage remained in the possession of the mortgagor, it is necessary for the plaintiff to establish the fact that such chattel mortgage was on file in the office of the register of deeds of the proper county at the time an attaching creditor levied upon such goods, in order to impart validity to such chattel mortgage as against an attaching creditor without actual notice.

2. FRAUD—*Adversary as Witness.* Where the *bona fides* of a transaction is in question, a wide latitude of examination should be permitted; and where a party under such circumstances uses his adversary as a witness, while he may not impeach the general character or reputation of such witness, he may show that such adversary had made contradictory statements, not for the purpose of impeaching him but as original evidence of his admissions.

MEMORANDUM.—Error from Chase district court; FRANK DOSTER, judge. Action in replevin by C. C. Whitson against J. W. Griffis, as sheriff of Chase county. Judgment for plaintiff. Defendant brings the case to this court. Reversed. The opinion herein, filed February 6, 1896, states the material facts.

*Solomon & Bland*, for plaintiff in error.
*Madden Bros.*, for defendant in error.

The opinion of the court was delivered by

COLE, J. : This was an action in replevin brought in the district court of Chase county by C. C. Whitson against J. W. Griffis, as sheriff of said county, to recover the possession of certain personal property claimed by Whitson under a chattel mortgage, and which had been taken by the sheriff under a certain order of attachment issued out of said court in an action brought by the Smith-Frazier Boot and Shoe Company against M. E. Breese. From a verdict and judgment in favor of Whitson, the sheriff brings the case here for review. A number of errors is alleged, the first being the admission of a certain promissory note as evidence in the trial of said cause. It appears from the record that the claim of Whitson was founded upon a certain note and chattel mortgage. A verified answer was filed in the case which put in issue the execution of the promissory note, and when said note was offered in evidence there appeared a discrepancy in the date and amount as compared with the note described in the mortgage. We think the court committed no error in admitting the note in evidence. Proof of the execution thereof had been made, as well as an explanation of the difference in date and amount.

The next objection raised is the admission of the chattel mortgage alleged to have been given to Whitson. It is claimed upon the part of the plaintiff in error that the mortgage was subject to two objections : (1) That it was void upon its face ; (2) that it was not properly identified as having been recorded or as being a part of the records of the office of the register of deeds of said county. So far as the first objection is concerned, it cannot be considered here at this time, for the reason that the same question was before the supreme court in a former hearing of this same case, and upon said hearing the chattel mortgage in question was held not to be void upon its face. (*Whitson v. Griffis*, 39 Kan. 211.) That question is therefore settled and we will proceed to consider the other.

Under the pleadings in this case and the evidence as shown by the record, we are of the opinion that the court committed error in admitting this chattel mortgage in evidence. From the pleadings, it appears to have been admitted that there was no change in possession of the goods described in the mortgage, but that the same remained in the possession of the mortgagor. It therefore became a very essential question whether said mortgage was of record when the levy was made by the sheriff. The answer being verified, every allegation of the petition was put in issue. The mortgage bore an indorsement made by one who purported to be a deputy register of deeds, and we think the court properly admitted evidence as to the fact that the person who purported to be said deputy was publicly acting and generally recognized as such, and we also think that the evidence introduced established *prima facie* the official character of the deputy in question. But that is not sufficient in this case. The provisions of the statute with relation to chattel mort-

gages differ from those with regard to real-estate mortgages. A chattel mortgage when properly filed becomes and should remain a part of the files in the office of the register of deeds, and where property remains in the possession of the mortgagor either the chattel mortgage itself or a copy thereof must be so shown to be on file in said office in order to confer any rights on the mortgagee as against the creditor of the mortgagor. No attempt was made in this case to show that the mortgage in question was a part of the records of the office of the register of deeds of Chase county, either at the time of the trial or at the time the defendant sheriff levied upon the goods in question. The chattel mortgage appears in the possession, not of a public officer, but of the the plaintiff below himself, and when the specific objection is raised that no showing has been made that such chattel mortgage is a part of the files of the office of the register of deeds the proof is still omitted. Nor is it claimed that any copy was placed on file. While the presumption arises from the *prima facie* showing of the official character of the deputy that the mortgage was filed at the date indorsed thereon, yet this raises no presumption in favor of its having remained in the custody of the officer up to the time when the levy was made, where the mortgage appears in the possession of the mortgagee himself, and no attempt is made to show that it or a copy of it remained in the custody of the proper officer. A more strict rule would apply of course in the case of a chattel mortgage, for the law does not provide for the recording of the same in full, but only for the recording of what may be termed a synopsis of the mortgage under different heads, the mortgage itself **or a copy** thereof remaining in the custody of the of-

fice for examination as to the full contents thereof by any person interested therein.

Paragraph 3904 of the statutes provides as follows:

"Upon the receipt of any such instrument, the register shall indorse on the back thereof the time of receiving it, and shall file the same in his office, *to be kept there* for the inspection of all persons interested."

It is true that paragraph 3907, General Statutes of 1889, provides that a certified copy of the original or copy so filed shall be received in evidence, but the same paragraph specially provides what it shall be received as evidence of in the following language:

"But only of the fact that such instrument or copy and such affidavit was received and filed according to the indorsement of the register thereon, and of no other fact."

It being necessary therefore that a chattel mortgage remain on file, and the certificate of the register being evidence of no further fact than the original filing, it certainly follows, at least where a verified answer is filed, that it is necessary to show that either the original chattel mortgage or a copy thereof remained on file when the only copy of such instrument claimed to have been filed is found, not in the possession of the public officer but of the mortgagee, and there has been no change of possession in the property mortgaged.

The next objection raised is as to the ruling of the court regarding certain testimony offered by the defendant below upon the examination of C. C. Whitson, plaintiff below. The object of the questions asked was to draw from plaintiff below a detailed account of where he obtained the money which he claimed to have loaned to M. E. Breese, and which it was claimed formed the consideration for the chattel mortgage in question, the *bona fides* of the transaction being ques-

tioned. While the supreme court held that the mortgage in question was not void upon its face, it also held that it was proper for the plaintiff in error in this case to question the good faith of the parties to the transaction, and it is universally held that where a transaction of this character is had between near relatives, as in this case, and the mortgage itself contains so many conditions favorable to the mortgagor, the widest latitude should be permitted in the examination of one claiming rights thereunder. It is true Whitson was being examined by plaintiff in error as his own witness, but the circumstances were such as to render his being called by the opposite party a necessity; he was the only person who could have knowledge of many of the facts surrounding the giving of this chattel mortgage. The principal fact in controversy in this case was whether the chattel mortgage executed by Mrs. Breese to Whitson was so executed for the purpose of hindering, delaying and defrauding the creditors of Mrs. Breese, and one of the elements involved in that question was whether Whitson had ever loaned Mrs. Breese the money claimed to be the consideration for said mortgage. We think, under the circumstances, it was competent for plaintiff in error to show, if possible, that Whitson had made different statements at different times under oath with regard to the transaction, and this, too, although the plaintiff in error had made Whitson his own witness upon the trial of the case. In many respects the testimony offered and the circumstances under which it was offered are the same as in the case of *Wallach v. Wylie*, 28 Kan. 138. In that case the court says:

"Wylie introduced in evidence the deposition of Wallach, taken on behalf of Wylie; and the plaintiff in error, Wallach, now claims that Wylie was and is

bound by everything that was testified to in such deposition by Wallach. This certainly is not the law, and such a thing never was the law. It is true that, when a party introduces a witness, he cannot then impeach the general character or reputation of such witness for truth and veracity, and it is generally true that he cannot show that the witness has made statements at other times and at other places contradictory to those which he testifies to. But neither of those cases is this case. Wylie did not attempt to impeach the general character or reputation of Wallach for truth and veracity, nor did he attempt to show that Wallach had made statements at other times and at other places contradicting the statements made by him in his deposition, *although Wylie would certainly have had the right in the present case to show such contradictory statements, for the very good reason that Wallach himself was a party to this action.* Wylie could have shown such contradictory statements, not for the purpose of impeaching Wallach, but as original evidence —original evidence of Wallach's admissions. The principal fact in controversy in this case was, whether the chattel mortgage executed to Wallach by Max N. Stetter, as the attorney in fact of Nathan Stetter, was executed for the purpose of hindering, delaying and defrauding the creditors of Nathan Stetter, or not; and the deposition of Wallach was introduced by Wylie for the purpose of proving, or tending to prove, that it was; and of course Wylie believed that it did prove, or tend to prove, that fact."

In this case Whitson had detailed what may be denominated a peculiar story of the manner in which he had received the money loaned Mrs. Breese, the substance of which was, that he had been left the sum of $5,000 as a legacy, and that the money had been brought to him by one Stone. The witness was asked the following question : "You testified about that matter in your Topeka deposition, did you not, judge?" And said question being objected to, the objection was sus-

tained.   The further question was propounded to the
witness :  "You testified in this case on the trial be-
fore in this court that you did not know why Mary
Pennington left you this money, did you not?"
Which question was also objected to and the objec-
tion sustained.   The witness then testified upon the
same subject that Stone brought the legacy in ques-
tion to him partly in gold and partly in currency, and
that the $5,000 was delivered by Stone to him in the
office of the probate judge in Chase county.   He was
then asked the following question :  "Do you want the
jury to understand, judge, that this man came to you
with $5,000 in cash — currency and gold — and de-
livered it to you?"   An objection was also sustained
to this question.   We are of the opinion that suffi-
cient facts had been shown in this case with regard to
the financial condition of Whitson to make this testi-
mony very material — that is, whether he received
the money which he claimed to have received — and
that under the circumstances of this case the court
should have permitted the witness to answer the ques-
tions.   We are not pretending to pass upon the *bona
fides* of the transaction between Whitson and Mrs.
Breese, but it was one which is entitled to strict scru-
tiny, as shown by the records.

The next contention is that the court erred in re-
fusing to admit certain depositions offered by plaintiff
in error.   The evidence contained in the depositions
tended to prove that the statements of Whitson as to
obtaining the money referred to in his testimony were
not true, and the depositions were refused upon the
ground that they were incompetent and immaterial,
and only tended to impeach one who had been used
by plaintiff in error as his own witness.   The question
is one which is not free from doubt.   The general

rule that a party may not impeach his own witness is too well established to need any citations for its support, and although the circumstances of the case are peculiar, we are inclined to the opinion that the evidence was properly refused.

A number of other errors are assigned, among them certain objections to the instructions of the court and exceptions to the refusal of the court to give certain instructions asked by plaintiff in error. We have carefully examined the instructions given and those refused, and are of the opinion that no error was committed by the court in that regard. All other questions raised will probably be eliminated upon another trial of the case, and will therefore not be considered here.

For the errors above referred to the judgment of the district court will be reversed, and the cause remanded for a new trial.

All the Judges concurring.